UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEN DOTSON, et al.,

    Plaintiffs,

v.                                      Case No. 08-CV-13118

ARKEMA, INC.,

    Defendant.
                                               /

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pending before the court is a motion for summary judgment, filed on December 19, 2008 by Defendant Arkema, Inc. Having reviewed the briefs[1] in the case, the court concludes a hearing on the motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendant's motion for summary judgment.

**I. BACKGROUND**

On July 21, 2008, Plaintiffs Allen Dotson, Eddie Citchen, Mark Jarvis, Kenneth Oakley, Carlton Reeves, and Steven Zenker filed the instant action. In their first amended complaint, Plaintiffs allege breach of fiduciary duty and denial of benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*, against Defendant, Plaintiffs' former employer, because they allege Defendant improperly calculated Plaintiffs' pension benefits, and Plaintiffs' subsequently failed to

---

[1] In addition to the customary briefs, the court permitted Plaintiff to file a "Sur-Response."

accept a severance agreement with Defendant ("Separation Agreement").  (Pls.' Am. Compl. ¶¶ 17-35.)

While employed by Defendant, The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("Union") served as Plaintiffs' exclusive bargaining agent with Defendant, pursuant to a collective-bargaining agreement which was executed most recently on March 1, 2006 ("CBA").  On February 28, 2006, Defendant Arkema, Inc. and Union signed the Separation Agreement in preparation for the closing of Defendant's manufacturing plant.  (Pls.' Am. Compl. ¶ 7.)  In its order of October 27, 2008, this court found that the Separation Agreement constituted an ERISA plan under 29 U.S.C. § 1002(1), and therefore Defendant is subject to the dictates of the ERISA statute.  (10/27/08 Order.)

In March of 2006, Plaintiffs filed a grievance through their Union under the terms of the CBA.  (Pls.' Resp. at 1.)  Plaintiffs alleged that they were eligible for both the Separation Agreement benefits and an additional two years "age" in their pension calculation under the terms of the Separation Agreement.  Plaintiffs further allege that they did not accept the Separation Agreement because Defendant did not correctly calculate Plaintiffs' pension benefits.  (Pls.' Resp. at 1-2.)  On April 19, 2007, an arbitrator found in favor of the Union and against Defendant regarding the calculation of pension benefits.  On May 1, 2007, Defendant notified Plaintiffs that Defendant would not continue to employ Plaintiffs after April 30, 2007.  (Pls.' Am. Compl. ¶ 16.)  Defendant and the Union also signed an agreement, effective May 24, 2007 ("Release"), "to settle and terminate fully and finally all differences and disputes between the Union and [Defendant] including any and all past, present or future claims

arising out of the labor contract between the parties." (Def.'s Mot. Ex. B ¶ 3.) The Release specifies that it is between Defendant, the Union, and the Union's local bargaining unit, Local 2-591 ("Local 2-591"), "on behalf of the employees of [Defendant] hereinafter specified." (Def.'s Mot. Ex. B.) On June 28, 2007, the Union and Defendant entered into an agreement to implement the arbitrator's decision.

Now Defendant argues that summary judgment is appropriate because the Union signed the Release, effectively waiving Plaintiffs' ERISA claims. Defendant alternatively argues that the doctrine of laches should estop Plaintiffs because Plaintiffs were not diligent in pursuing these claims. In response Plaintiffs contend that the Release cannot serve to release Defendant from liability on behalf of Plaintiffs because Plaintiffs were not a party to the Release. Plaintiffs also contend that the doctrine of laches cannot apply to their claims.

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex*

*Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). They must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'") (emphasis and alteration in original) (citation omitted). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III.  DISCUSSION

#### A.  Timing of the Summary Judgment Motion

Plaintiffs maintain that summary judgment is inappropriate at this stage of the parties' litigation because Plaintiffs allege that (1) Defendant has not supported its motion with "affidavits or other admissible evidence," (2) no discovery has occurred, and (3) genuine issues of material fact remain.  (Pls.' Resp. at 4.)

As Defendant correctly identifies in its brief, Rule 56(b) provides that a "party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim."  Fed. R. Civ. P. 56(b). Because Defendant is the party from whom Plaintiffs seek relief, Defendant is specifically permitted to move for summary judgment without supporting affidavits pursuant to Rule 56.

Plaintiffs also argue that summary judgement will ordinarily not be granted before discovery has commenced.  (Pls.' Resp. at 6.)  The Sixth Circuit has stated that district courts should grant a party opposing a motion time to engage in discovery necessary to oppose the motion.  *Routman v. Automatic Data Processing, Inc.*, 873 F.2d 970, 971 (6th Cir. 1989).  However, Plaintiffs have not followed the procedure for making this claim as prescribed in Rule 56(f).  *See* Fed. R. Civ. P. 56(f) (requiring that a party, who is opposing a motion for summary judgment because it has not had discovery, must submit an affidavit regarding the "specified reasons[] it cannot present facts essential to justify its opposition").  In addition, at the scheduling conference the court held on November 24, 2008, the court instructed the parties to begin discovery even though the court would forestall entering a court-ordered scheduling order until after the parties had

time to file any motion to compel arbitration or motion to dismiss. The court cannot find Plaintiffs' discovery argument persuasive where, for the past three months, they could have pursued evidence but have not availed themselves of the opportunity.

The court will not deny Defendant's motion for summary judgment on the basis of these procedural arguments but will address Plaintiffs' substantive argument below.

### B. Doctrine of Laches

Defendant asserts the affirmative defense of laches and argues that this doctrine bars Plaintiffs' claims because Plaintiffs did not diligently pursue their ERISA claims. (Def.'s Mot. at 6.) In response, Plaintiffs argue that a court will not ordinarily apply the doctrine of laches if a plaintiff files suit within the statutory period.

Laches is an affirmative defense[2] that requires the asserting party to show: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001) (*Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 367 (6th Cir. 1984)). In addition, there exists a presumption that, "in the absence of unusual circumstances, a suit will not be barred before the analogous statute has run but will be barred after the statutory time has run." *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365 (6th Cir. 1985). ERISA specifically provides that a plaintiff must bring

---

[2] Plaintiffs preliminarily complain that Defendant failed to specify "laches" as an affirmative defense in its answer. Indeed, the word "laches" does not there appear, but the court observes that "estoppel" was among the defenses listed. Laches is merely one form of estoppel. *Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix,* 283 F.3d 877 (7th Cir. 2002) ("Laches is thus a form of equitable estoppel rather than a thing apart."); 1 Dan B. Dobbs, Law of Remedies, § 2.4(4) at 105 (2d ed. 1993). In any event, even if the absence of "laches," as such, were a defect, it would be readily cured by a Rule 15 amendment.

any action for breach of fiduciary duty within "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113(2). When ERISA does not provide a statute of limitations for a particular type of claim, as it does not for denial of benefits claims, federal courts apply the "limitations period from the most 'analogous' to state or federal law." *Med. Mut. of Ohio v. K. Amalia Enter. Inc.*, 548 F.3d 383, 390 (6th Cir. 2008) (citing *Lampf, Pelva, Limkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355-58 (1985)). In Michigan the most analogous statutory period is the six-year breach of contract statutory period. *Santino v. Provident Life and Accident Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001) (citing Mich. Comp. Laws § 600.5807(8)).

Plaintiffs filed their complaint well within the statutory time period, and Defendant has not demonstrated that any unusual circumstances exist. *See Tandy Corp.*, 769 F.2d at 365. The statutory periods for a breach of fiduciary duty and denial of benefits claims are three and six years, respectively. Even if Plaintiffs' claims accrued in early 2006, they filed suit in July of 2008, which was within the statutory period for both claims. Furthermore, Defendant has not shown a lack of diligence by Plaintiffs. In its brief, Defendant even outlines the actions Plaintiffs took to pursue their claims through the Union,³ including proceeding to arbitration and filing a grievance with the National Labor Relations Board ("NLRB") in the spring of 2007. (Def.'s Mot. at 7.) On July 21,

---

³ Defendant seems to confuse what it is that Plaintiffs must diligently pursue. It is not, as Defendant suggest, the acceptance of the Separation Agreement, rather it is pursuing the ERISA claims for denial of benefits and breach of fiduciary duty. In the instant case, in particular, it is inapposite to insist that Plaintiffs' refusal of the Separation Agreement be considered non-diligent when Plaintiffs' claims consist of Defendant's breach of fiduciary duty with respect to the Separation Agreement.

7

2008, Plaintiffs filed suit in this court.  Defendant has not explained how such actions constitute lack of diligence on the part of Plaintiffs.  In addition, while Defendant may have enumerated several ways in which Plaintiffs' alleged lack of diligence prejudiced them, *see Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 231 (6th Cir. 2007) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Practice and Procedure § 2946 at 117 (2d ed. 1995)), the conjunctive nature of this defense precludes a finding that Plaintiffs be barred from pursuing their claims.  *See Herman Miller, Inc.*, 270 F.3d at 320.  Therefore, the court will deny Defendant's motion for summary judgment with respect to this issue.

### C.  Release

Defendant argues that Plaintiffs' claims are barred because Plaintiffs expressly released any claims, including ERISA claims, which they had against Defendant.  (Def.'s Mot. at 4.)  Plaintiffs, in turn, contend that the Release discharges only claims by the Union and that Plaintiffs' individual statutory claims therefore survive.

Federal law permits waiver of ERISA claims.[4]  *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996); *Taylor v. Visteon Corp.*, 149 F. App'x 422, 426-27 (6th Cir. 2005) ("Like most legal claims, ERISA claims . . . may be settled.").  *See also Samms v. Quanex Corp.*, No. 95-2173, 1996 WL 599821, *3 (6th Cir. Oct. 17, 1996) (citing *Miller v. Gen. Motors Corp.*, 845 F.2d 326 (6th Cir. 1988)).  In addition, a union may waive certain statutory rights on behalf of its members.  *Alexander v. Gardner-Denver Co.*,

---

[4] The Release specifically states with respect to ERISA that it does not waive *prospective* claims.  (Def.'s Mot. Ex. B ¶ 5) (emphasis added.)  This is proper and in accord with federal case law.  *See Taylor*, 149 F. App'x at 427.

415 U.S. 36, 51 (1974) ("It is true, of course, that a union may waive certain statutory rights related to collective activity, such as the right to strike.") (citing *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270 (1956)).[5]  The Supreme Court has also stated, however, that, "we will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.'  More succinctly, the waiver must be clear and unmistakable." *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983); *see also Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998) (finding that a union's agreement to arbitrate "[m]atters under dispute" was insufficient to require employees to forfeit their right to a federal judicial forum).  In addition to the federal requirements regarding waiver, the Release is subject to the Michigan state law governing releases.  *See Taylor*, 149 F. App'x at 424-25.

> The interpretation of the release [is] a question of law for the court to decide.  The scope of a release is governed by the intent of the parties as it is expressed in the release.  If the text in the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release.  A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation.  The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity.

*Cole v. Ladbroke Racing Michigan, Inc.*, 614 N.W.2d 169, 176 (Mich. App. Ct. May 9,

---

[5] Some types of claims are not subject to waiver, such as FMLA, ADA, or Title VII claims, but neither party argues that ERISA claims are not, as a general matter, subject to waiver by a union on behalf of its members.  *See Ford Motor Co. v. Huffman, et al.*, 345 U.S. 330, 337-38 (1953) ("Any authority to negotiate derives its principal strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interests of the parties represented."); *see also* 20 Williston on Contracts § 55:30 (4th ed.) ("A distinction has been drawn between a union having the power to waive statutory rights related to collective activity, but not statutory rights that are of a personal, and not merely economic, nature.").

9

2000).

In this case, the Release states: "the Union discharges and releases [Defendant] of and from all claims . . . in any way arising from or related to . . . violations of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., or regulations promulgated thereto." (Def.'s Mot. Ex. B ¶ 5.) Although it is "clear and unmistakable" as to the waiver of ERISA claims, the parties nonetheless dispute whether the Release bars Plaintiffs from pursuing their individual claims against Defendant when the Release specifies that the "the Union discharges and releases [Defendant]" and does not mention individual bargaining unit employees.[6] (Def.'s Mot. Ex. B ¶ 5.)

To determine whether Plaintiffs are bound by the Release, the court uses Michigan state law to interpret the language of the Release. *Taylor*, 149 F. App'x at 424-25. Under Michigan law, it is the province of the court to decide whether a release is unambiguous, and if so, to interpret it. *Cole v. Ladbroke Racing Michigan, Inc.*, 614 N.W.2d at 176. A release "is ambiguous only if its language is reasonably susceptible to more than one interpretation." *Id.* However, a release is not ambiguous if ambiguities are found only when portions of the release are read out of context. *Green v. Consumers Power Co.*, No. 199992, 1998 WL 2016545, *5 (Mich. App. Ct. Mar. 20,

---

[6] Plaintiffs argue that the Release does not satisfy the "clear and unmistakable" standard because it is not "clear and unmistakable" as to what parties the Release binds. (Pls.' Resp. at 8.) However, courts have used the "clear and unmistakable" standard only to determine whether a waiver was explicit regarding which rights the parties waived in a given release or agreement. *See, e.g.*, *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998); *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983); *Mitchell v. Chapman*, 343 F.3d 811, 824 (6th Cir. 2003).

10

1998). Finally, "[a] contract must be construed to give meaning and effect to every word, clause, and phrase." *Burkhart Assocs., Inc. v. Nowakowski*, Nos. 277744, 279402, 2008 WL 4367528, *2 (Mich. App. Ct. Sept. 25, 2008) (citing *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003)).

Plaintiffs argue that whenever the language of the Release acts to release Defendant of liability, the language states that "the Union" so acts, rather than also stating that individual bargaining unit employees, such as Plaintiffs, also release Defendant from liability.[7] (Def.'s Resp. at 8.) In illustration of their argument, Plaintiffs' point out that the Release states: (1) "[Defendant] and the Union have entered into this [Release] to address the effects of the sale on the Union, the bargaining unit and the affected employees, and to settle and terminate fully and finally all differences and disputes between the Union and [Defendant]" (Def.'s Mot. Ex. B ¶ 3); (2) "the Union discharges and releases [Defendant] of and from all claims . . . that the Union in any way might have, or could have, against [Defendant]" (Def.'s Mot. Ex. B ¶ 5); and (3) "[t]he Union hereby withdraws with prejudice all grievances" (Def.'s Mot. Ex. B ¶ 7).

To allow this argument to govern the interpretation of the Release, however, would not "give meaning and effect to every word, clause, and phrase" of the Release. *See Burkhart Assocs., Inc.*, 2008 WL 4367528 at *2 (citing *Klapp*, 663 N.W.2d at 453).

---

[7] Plaintiffs also argue that the language of the Release is similar to that of the CBA, which language this court interpreted to preclude individual bargaining unit employees, such as Plaintiffs, from compelling Defendant to arbitrate their claims. (Pls.' "Sur-Response" at 2-3.) This court, however, in its order January 21, 2009, denied Plaintiffs' motion to compel arbitration not because Plaintiffs were not bound to the CBA, but because the CBA explicitly provided that the Union had the power to decide which claims would be submitted to arbitration. (1/21/09 Order at 5.) This argument is inapplicable to the terms of the Release.

The court begins its interpretation with the preamble to the Release.  The preamble of the Release identifies the parties to the agreement as Defendant and Union, "on behalf of the employees of [Defendant] hereinafter specified."  (Def.'s Mot. Ex. B.)  To construe the Release as Plaintiffs suggest would render the phrase, "on behalf of the employees of [Defendant] hereinafter specified," superfluous.  The court finds that the phrase, "on behalf of the employees of [Defendant] hereinafter specified," is a definitional phrase, defining "Union" for use in the remainder of the Release.[8]  Thus, for the remainder of the Release, the term "Union" embraces individual bargaining unit employees.

Moreover, paragraph six of the Release specifically carves out as an exception from the Release certain types of individual bargaining unit employees' suits.  (Def.'s Mot. Ex. B ¶ 6.)  Had the parties not contemplated that the Release barred all other suits by individual bargaining unit employees such as Plaintiffs, the provision in paragraph six would have no meaning; there would have been no reason to include paragraph six in the Release.  The phrase "on behalf of the employees of [Defendant] hereinafter specified," means that the Union waives any of the enumerated claims which

---

[8] The "employees of [Defendant] hereinafter specified," include the "employees at the plant" and the "bargaining unit and the affected employees."  (Def.'s Mot. Ex. B ¶¶ 2-3.)

the individual bargaining unit employees otherwise could have brought against Defendant.[9]

Next, even in instances where Plaintiffs would have the court interpret the Release to bind only the Union, such as the phrase, "[Defendant] and the Union have entered into this [Release] to address the effects of the sale on the Union, the bargaining unit and the affected employees," specify that the parties executed the Release for the purpose of addressing "the effects of the sale on . . . the bargaining unit and the affected employees." (Def.'s Mot. Ex. B ¶ 3.) This further supports the interpretation that the Union was acting "on behalf of" the individual bargaining unit employees in executing the Release.

Finally, to read the Release as Plaintiffs suggest creates ambiguity because it takes several phrases of the Release out of context and reads them in isolation. *See Green*, 1998 WL 2016545 at *5. However, when the court reads the Release from beginning to end, interpreting the words of the Release in context, no ambiguity results. *See id.* Therefore, the correct interpretation of the Release is that it binds individual bargaining unit employees as well as the Union, as explained above.

Because the court finds that the Release binds individual bargaining unit employees of Defendant as well as the Union, Plaintiffs' claims are barred. There exists

---

[9] The Release also creates an exception for the claims of Plaintiffs, which the Union submitted to arbitration and then to the NLRB. (Def.'s Mot. Ex. B ¶¶ 3, 10.) While these exceptions are claims that the Union submits for Plaintiffs, their existence does not affect the interpretation of the Release one way or another. It shows that the Release does waive claims it would otherwise submit for individual bargaining unit employees, except for those enumerated, but this does not alter the effect of paragraph six: the paragraph six exception for individual suits means that the Release waives those not specifically stated.

no genuine issue of material fact, and the court will therefore grant Defendant's motion for summary judgment as to this issue.

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that the Defendant's motion for summary judgment [Dkt. # 23] is GRANTED.


        s/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated:  February 26, 2009


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 26, 2009, by electronic and/or ordinary mail.

        s/Lisa Ware for Lisa G. Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522